UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID MACKOON, | Civil Action No. 18-10150 (MCA) |
| Petitioner, | |
| v. | OPINION |
| PATRICK NOGAN, et al., | |
| Respondent. | |

This matter has been opened to the Court by Petitioner David Mackoon's ("Petitioner" or "Defendant") filing of a habeas petition pursuant to 28 U.S.C. § 2254. Having reviewed the Petition, Respondent's answer, and the relevant record, the Court denies the Petition for the reasons stated in this Opinion and also denies a certificate of appealability ("COA").

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following factual overview is taken from the Appellate Division decision affirming the denial of Petitioner's petition for postconviction relief ("PCR"):

> Defendant was convicted of charges arising from the masked, armed, smash-and-grab robberies of three jewelry stores. All three robberies were recorded by surveillance cameras.
>
> First, on July 3, 2002, three men robbed Goldenland Jewelry in Bloomfield of $30,000 in jewelry. After assaulting the owner, they ran out of the store to a double-parked getaway car driven by defendant.
>
> Second, on December 18, 2002, several men robbed All Page Jewelry in East Orange of $20,000 in jewelry. One robber, later identified as defendant, went over the counter and detained the employees at gunpoint while other robbers broke into the glass jewelry cabinets. The employees noted that defendant was light-skinned.

> Third, on October 29, 2003, three men robbed Hot Stop Jewelry in Orange. They fled to a double-parked getaway car driven by defendant.
>
> When defendant was arrested in 2004, he had on his person a watch from the third robbery and a ski mask. In 2005, defendant sent a letter to Mark Bowers telling him not to cooperate with the State and threatening Derrick Knight for cooperating.
>
> Knight and Salim Amir testified as State witnesses at trial. Amir testified that he conspired with defendant and Knight to commit the third robbery and that defendant drove the men to and from the robbery.
>
> Knight testified as follows. Defendant recruited him to commit all three robberies and recruited the varying other participants in each robbery, including Bowers and Amir. In the first and third robbery defendant drove the getaway cars. In the second robbery defendant was the "lead man"; the first man into the store who detained the employees. Knight watched the surveillance video from the second robbery and identified defendant. Knight confirmed defendant had "short arms" but could still hold a gun and drive a car.
>
> The State also called Dr. Zafer Termanini as an expert in orthopedic surgery and biomechanics. Dr. Termanini testified his analysis of the surveillance video from the second robbery showed the lead man had deformed arms. Dr. Termanini testified he examined defendant and found he had a congenital deformity in both arms limiting the movement of his hands. Dr. Termanini opined that the person in the surveillance video of the second robbery had limited movements consistent with a person with defendant's condition.

*State v. Mackoon*, No. A–3774–13T2, 2017 WL 279576, at *1 (N.J. Super. App. Div. Jan. 23, 2017).

The jury convicted defendant of three counts of second-degree conspiracy to commit robbery, N.J.S.A. 2C:5–2 and N.J.S.A. 2C:15–1, and second-degree tampering with a witness, N.J.S.A. 2C:28–5.  In addition, with regard to the second robbery only, the jury convicted defendant of first-degree robbery, N.J.S.A. 2C:15–1; third-degree unlawful possession of a firearm, N.J.S.A. 2C:39–5(b); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39–4(a).  *See id.*

The trial judge sentenced defendant to a total of thirty years in prison with an 85% period of parole ineligibility for first-degree robbery, merged two counts, and imposed concurrent terms on the remaining counts. *Id.* at *2. The Appellate Division affirmed, and the Supreme Court denied certification on January 21, 2010. *State v. Mackoon*, 201 N.J. 154 (2010).

Defendant filed his PCR petition in 2010. The PCR judge, who was the same judge who presided over defendant's trial, heard oral argument. He then issued a written opinion finding defendant had not shown a prima facie case to merit an evidentiary hearing. *See Mackoon*, 2017 WL 279576, at *2; *see also* Exhibit 19 at 203-223.

The Appellate Division affirmed the denial of Petitioner's PCR in an unpublished opinion. *See id.* at *5. The New Jersey Supreme Court denied certification on November 17, 2017. *State v. Mackoon*, 231 N.J. 325 (2017).

Petitioner submitted the instant habeas Petition for filing on May 24, 2018. *See* ECF No. 1. Respondents submitted their Answer on May 20, 2019. ECF No. 14-15. Petitioner did not file a traverse.

## II.     STANDARD OF REVIEW

Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner has the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, tit. I, § 101 (1996), 28 U.S.C. § 2244, federal courts in habeas corpus cases must give considerable

deference to determinations of state trial and appellate courts. *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Where a state court adjudicated a petitioner's federal claim on the merits,[1] a federal court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40-41 (2012) (quoting 28 U.S.C. § 2254(d)).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," at of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529

---

[1] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

U.S. 362, 412 (2000)).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d) (1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record.  *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  29 U.S.C. § 2254(e)(1); *see Miller–El v. Dretke*, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A petition for a writ of habeas corpus "shall not be granted unless ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1); *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).  This Court may, however, deny petitioner's unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a

writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

### III. ANALYSIS

Petitioner raises three grounds for relief in this instant Petition: Grounds One and Two of the Petition assert ineffective assistance of trial counsel; Ground Three asserts that the state courts erred in denying him an evidentiary hearing. The Court begins with the ineffective assistance of counsel claims.

To succeed on an ineffective assistance of counsel claim, petitioner must establish that: (1) counsel's performance was deficient; and (2) this inadequate representation "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Williams v. Taylor*, 529 U.S. 362, 390-1 (2000). To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 688). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* (citing *Strickland*, 466 U.S. at 689). The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment." *Harrington* 562 U.S. at 687. "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" and focuses on "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694). It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (citing *Strickland*, 466 U.S. at 687).

   a. **Ground One: Ineffective Assistance for Failing to Obtain an Expert Witness**

Petitioner argues that he was denied effective assistance of counsel when defense counsel failed to obtain and call an expert witness at trial to rebut the testimony of the State's expert, Dr. Zafer Termanini. The PCR court denied this claim, finding that Petitioner failed to establish either prong of *Strickland*. *See* Exhibit 19 at 218-220.

In affirming the denial of PCR, the Appellate Division determined that Petitioner could not establish that he was prejudiced by his counsel's failure to obtain a rebuttal expert. The Appellate Division analyzed the claim as follows:

> Defendant asserts that trial counsel did not thoroughly investigate the case because he did not call an expert witness to combat Dr. Termanini's testimony. Defendant submitted to the PCR court a letter from a forensic pathologist, Dr. Mark Taff. Dr. Taff opined that the video surveillance evidence was "of

suboptimal evidentiary/technological value for purposes of medical diagnostic identification," and gave eleven reasons for his opinion.

Examination of Dr. Taff's reasons show he would have added little, if any, new and relevant information. He noted the surveillance video was in black and white and was taken from above, which would have been obvious to the jurors who viewed the video and still photos from the video. He noted the video was "extremely blurry," but that too was obvious to the jury. Indeed, Dr. Termanini testified the video was "very, very blurry" and of "very poor quality," so he used a photo processor to enhance the video and view it frame by frame.

Dr. Taff opined the video could not be used to identify the person's age, sex, race, height, weight, eye color, fingerprints, dental impressions, or other "standard, time-honored" identification criteria. However, that did not rebut Dr. Termanini's testimony, as he did not claim to be using any of those techniques to identify the condition of the person in the video.

Instead, Dr. Termanini noted that the person had a deformity of both upper extremities, that his hands appeared fixed with limited movement, and that as a result he was unable to vault over the jewelry counter but had to slide across it. Dr. Termanini examined defendant and found that he had a congenital deformity of both upper extremities as the thicker radius bone in his forearms never developed; that he had surgery to fuse his wrists to the thinner ulna bone, stabilizing his wrist but eliminating most of the movement of his hands; and that as a result he would have to slide across the counter.

On direct appeal, we upheld the admission of Dr. Termanini's testimony, finding he "had the requisite qualifications to offer his opinion that the condition he observed during a physical examination of defendant was consistent with the movements of the person depicted in the surveillance tape of the second robbery sliding across a counter in a jewelry store." *Mackoon*, *Supra*, slip. op. at 21. The judge observed that Dr. Termanini's testimony about the surveillance video was "in fact consistent with the images" on the video, which showed the person going over the counter "without the use of his hands" in a manner "consistent with someone without the full use of his arms."

Dr. Taff stated that "[t]he length of the subject's arm cannot be established from viewing the film" and that "[i]t is impossible to tell if the upper extremities are of equal or different lengths and/or development" or "if any limb differences are of congenital or acquired (post-traumatic) origin(s)." However, Dr. Termanini did not measure or rely on the length of the upper

extremities but instead relied on the limitations on defendant's movement. Dr. Termanini believed the deformities were congenital, but conceded he did not know what, if any, subsequent injuries defendant might have sustained.

Dr. Taff stated "[i]t is unclear if the subject's right hand is empty or holding an object (e.g., gun)." Dr. Termanini said he could see the person was holding something that looked like a weapon. But that was irrelevant to whether the person's limited movements were consistent with defendant's limited ability to move, particularly as defendant could hold a gun.

Dr. Taff's final reason for his opinion was that "[a]lthough the subject in the film appears to be human, the possibility of an animal dressed in human clothing cannot be completely ruled out." The idea that an animal wearing clothes was filmed robbing a jewelry store illustrates the lack of utility of Dr. Taff's opinion.

Moreover, trial counsel made many of the points raised by Dr. Taff by cross-examining Dr. Termanini. Counsel confronted Dr. Termanini regarding the very poor quality of the surveillance video. Counsel elicited that Dr. Termanini did not have access to defendant's medical records, did not know his medical history or view any x-rays, and did not measure defendant's arms. Counsel got Dr. Termanini to admit his entire analysis was based on a fifteen-minute examination of defendant and a few hours reviewing the video. Trial counsel also attempted to discredit Dr. Termanini's testimony by highlighting his fee. In his summation, trial counsel further attacked Dr. Termanini, calling him "a hired gun" and again highlighting the low quality of the video.

The [PCR] judge observed that trial counsel "vigorously" cross-examined Dr. Termanini. The [PCR] judge noted that "[a] retained expert witness would have offered little more than what [trial counsel] accomplished during cross-examination and summation: the argument that the video was of such poor quality that it should be disregarded." The [PCR] judge correctly concluded defendant had not shown a reasonable probability the result would have been different if trial counsel called an expert witness.

Further, the surveillance video which Dr. Termanini based his testimony on was played for the jury twice, once during the State's direct examination and again during defense counsel's summation. Moreover, the [trial] judge properly instructed the jury that they were not bound by the expert's opinion and they were free to reject it if they found him not credible. Thus, the jury was able to make its own determination of whether the surveillance

> > video conclusively showed that the subject in the video was defendant and whether Dr. Termanini was credible.
> >
> > For all of these reasons, defendant fails to show a reasonable probability that the result of the trial would have been different had counsel called Dr. Taff as a competing expert witness. *See Parker*, supra, 212 N.J. at 279–80.
> >
> > Because defendant failed to satisfy the second prong of the *Strickland/Fritz* test, his claim fails. "[A] defendant must satisfy both prongs of the *Strickland/Fritz* test." *State v. Miller*, 216 N.J. 40, 62 (2013), cert. denied, ⸺ U.S. ⸺, 134 S. Ct. 1329, 188 L.Ed. 2d 339 (2014). "Although a demonstration of prejudice constitutes the second part of the *Strickland* analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient." *State v. Gaitan*, 209 N.J. 339, 350 (2012) (citing *Strickland*, supra, 466 U.S. at 697, 104 S. Ct. at 2069, 80 L.Ed. 2d at 699), cert. denied, ⸺ U.S. ⸺, 133 S. Ct. 1454, 185 L.Ed. 2d 361 (2013).
>
> *Mackoon*, 2017 WL 279576, at *2–4.

The Appellate Division did not unreasonably apply clearly established federal law in determining that Petitioner failed to establish prejudice and denying Petitioner's claim on that basis. Here, Dr. Taff's conclusion that the video had "suboptimal evidentiary/technological value for purposes of medical diagnostic identification" for the eleven reasons provided in the Report, *see* Exhibit 19 at 182-184, did <u>not</u> directly rebut the relevant testimony, as Dr. Termanini did not "identify" Petitioner by any of the means discussed by Dr. Taff. Instead, Dr. Termanini testified that the deformity that he observed during a physical examination of Petitioner was consistent with the movements of the person depicted in the surveillance tape of the second robbery sliding across a counter in a jewelry store. Moreover, as explained by the Appellate Division, trial counsel's cross examination of Dr. Termanini and his summation emphasized the poor quality of the video and the fact the Dr. Termanini failed to conduct a more in depth examination of Petitioner and his medical records. Ultimately, the Appellate Division's

determination that Petitioner failed to establish prejudice is not unreasonable because the report provided by Dr. Taff and the conclusions therein did not significantly weaken or rebut the gravamen of Dr. Termanini's testimony and merely echoed arguments vigorously made by Petitioner's counsel at trial.[2] Because the Appellate Division did not unreasonably apply prong two of *Strickland* in rejecting this claim, the Court denies relief on Ground One of the Petition.

### b. Ground Two: Ineffective Assistance for Failing to Object to the Prosecutor's Summation

Petitioner also asserts that his trial counsel was ineffective for failing to object to the prosecutor's use of "I" and "I believe" in her summation when arguing about the credibility of the cooperating robbers Knight and Amir. The PCR court rejected this claim, finding that Petitioner failed to establish either prong of *Strickland*. Exhibit 19 at 221-222. The Appellate Division provided the following analysis of this claim:

> Defendant also claims trial counsel was ineffective for not objecting to the use of "I" in the prosecutor's summation. "We afford prosecutors considerable leeway in closing arguments so long as their comments are reasonably related to the scope of the evidence presented." *State v. Timmendequas*, 161 N.J. 515, 587

---

[2] In order to establish prejudice, a more compelling showing is needed. In *Showers v. Beard*, 635 F.3d 625 (3d Cir. 2011), for example, the Third Circuit provided habeas relief to a petitioner who alleged that her attorney was ineffective for failing to obtain a rebuttal expert witness. Showers was convicted of the first degree murder of her husband. *Id.* at 626. The evidence established that Showers' husband died from an overdose of liquid morphine. *Id.* at 627. At trial the Commonwealth established through expert testimony and circumstantial evidence that the taste of liquid morphine can be masked, and that Showers surreptitiously poisoned her husband. *Id.* Showers alleged on collateral review that her trial and appellate counsel were ineffective for failing to present expert rebuttal testimony regarding the properties of liquid morphine—specifically whether the taste could be masked. *Id.* At a hearing on her petition, Showers presented the testimony of Dr. Cyril Wecht, "a nationally recognized and acclaimed forensic pathologist." *Id.* Wecht testified that "the lethal dose could not have been administered surreptitiously or forcefully and that Showers' husband likely committed suicide." *Id.* Further, Showers appellate counsel testified that if he had it to do over again, he would have raised on appeal the issue of trial counsel failing to call a rebuttal expert. *Id.* at 628.

(1999), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L.Ed. 2d 89 (2001). "'A prosecutor may not express a personal belief or opinion as to the truthfulness of his or her witness's testimony.'" *State v. Bradshaw*, 392 N.J. Super. 425, 437 (App. Div. 2007) (citation omitted), aff'd, 195 N.J. 493 (2008). "On the other hand, a prosecutor is free to 'argue that a witness is credible, so long as the prosecutor does not personally vouch for the witness or refer to matters outside the record as support for the witness's credibility.'" *Ibid.* (citation omitted).

Defendant now focuses solely on one remark. The prosecutor, responding to defense counsel's attacks on the credibility of the cooperating robbers Knight and Amir, argued: "I submit to you that they are individuals who have been called by the State, and I will be speaking to you at some length about why I believe they are worthy of belief, but I urge you to recall that the State does not select them." The prosecutor then reviewed the evidence which she submitted showed Knight and Amir were credible. The prosecutor's arguments were thus "'based on the evidence'" and she drew "'reasonable inferences from th[e] evidence.'" *State v. T.J.M.*, 220 N.J. 220, 236 (2015) (citation omitted). Furthermore, the prosecutor made clear she was making an argument from the facts by using the phrase "I submit," which is a proper "'method of prefacing an argument.'" *State v. Cagno*, 409 N.J. Super. 552, 604 (App. Div. 2009) (citation omitted), aff'd, 211 N.J. 488 (2012), cert. denied, ─── U.S. ───, 133 S. Ct. 877, 184 L.Ed. 2d 687 (2013).

The judge determined that, though this statement may have "bordered on an inappropriate personal opinion," this "single reference to personal belief, in the context of the rest of the prosecutor's comments discussing the witness's credibility, did not amount to a denial of [defendant's] right to a fair trial." We agree. Indeed the statement would have had the same meaning if the words "I believe" had been removed.

We have also reviewed the prosecutor's summation regarding the prosecutor's other uses of "I" identified in defendant's PCR brief. We find no basis for successful objection to those remarks, such as "I believe that you will recall," "I ask you to, if you find it appropriate to do so, consider," and "I'm arguing to you that his testimony is worthy of belief." The prosecutor's argument that "I think [Knight and Amir are] very different types of witnesses" was followed by "I submit" that Amir was not as bright as Knight and preceded by "you heard him testify."

The prosecutor's cited comments in summation were largely unobjectionable. In any event, as the judge found, defendant failed to show a reasonable probability that the result of

> the trial would have been different had trial counsel objected. Indeed, there is no reason to believe the use of "I" had any effect on the outcome of the trial. *See State v. Chew*, 150 N.J. 30, 83–84 (1997). Moreover, the trial court instructed the jury that remarks by counsel "are not evidence." "We presume the jury followed the court's instructions." *State v. Smith*, 212 N.J. 365, 409 (2012), cert. denied, —— U.S. ——, 133 S. Ct. 1504, 185 L.Ed. 2d 558 (2013). Thus, defense counsel was not ineffective for not objecting to the prosecutor's remarks.

*State v. Mackoon*, 2017 WL 279576, at *4–5. The Court has reviewed the prosecutor's summation, and finds that the Appellate Division did not unreasonably apply *Strickland* when it determined that trial counsel was not deficient for failing to object to the prosecutor's use of "I believe" or the other uses of "I" in her summation.[3] Read in context, the prosecutor was not vouching for the credibility of the witnesses; she used "I believe" and "I submit" interchangeably, and in both cases, the prosecutor referred to the evidence submitted at trial and not her personal opinions about the credibility of the witnesses. Just as "counsel cannot be deemed ineffective for failing to raise a meritless claim" *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000), counsel also cannot be deemed ineffective for raising a meritless objection to the state's summation. Likewise, the Appellate Division did not unreasonably apply *Strickland* in finding that there was no reasonable probability that the result of the proceeding would have been different had counsel objected to the prosecutor's wording during summation. As such, the Court denies relief on Ground Two.

---

[3] The Court notes that Petitioner asserts that his counsel provided ineffective assistance of counsel when he failed to object to the prosecutor's use of "I" in her summation. As such, the clearly established federal law for this claim is *Strickland* and not *Darden v. Wainwright*, 477 U.S. 168 (1986), as suggested by Respondents. *Darden* provides the clearly established federal law for when a prosecutor's comments violate a defendant's due process rights, which is a distinct claim. *See Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 637 (1974) ("the relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"). To the extent Petitioner is also claiming that the prosecutor's comments denied him due process, this claim is denied as meritless pursuant to 28 U.S.C. § 2254(b)(2).

c.  **Ground Three: Denial of an Evidentiary Hearing**

Finally, in Ground Three, Petitioner asserts that the PCR court erred in denying him an evidentiary hearing. The Appellate Division affirmed the denial of an evidentiary hearing as follows:

> The PCR court properly denied an evidentiary hearing. "A defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief[.]" R. 3:22–10(b). "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim ... will ultimately succeed on the merits." Ibid. Even "viewing the facts alleged in the light most favorable to the defendant" he failed to do so here. *Ibid.*

*Mackoon*, 2017 WL 279576, at *5.

The denial of an evidentiary hearing is a matter of state law that is not cognizable on federal habeas review. Under New Jersey law, a court should grant an evidentiary hearing on a PCR petition if a defendant has presented a prima facie case of ineffective assistance of counsel. *State v. Preciose*, 129 N.J. 451, 462 (1992); *see also State v. Goodwin*, 173 N.J. 583, 586 (2006). A prima facie showing is demonstrated when it is clear from the record there is "a reasonable likelihood" that petitioner's claim "will ultimately succeed on the merits." *State v. Marshall*, 148 N.J. 89, 158, cert. denied, 522 U.S. 880, (1997) (internal citations omitted); *see also* N.J.C.R. 3:22-10(b). Without such a showing, no evidentiary hearing is required. *State v. Cummings*, 321 N.J. Super. 154, 169-70, certif. denied, 162 N.J. 199 (1999).

A writ of habeas corpus can be granted only on the ground that petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2254(a). The claim raised by Petitioner does not involve federal or constitutional law, but instead challenges an application of state law, specifically, N.J.C.R. 3:22-10(b). To the extent Petitioner is asserting that he established a prima facie case of ineffective assistance under *Strickland*, warranting a

hearing on the claims presented in Grounds One and/or Two of the Petition, the Court disagrees for the reasons explained above.  For these reasons, habeas relief is denied as to Ground Three.

IV. **CERTIFICATE OF APPEALABILITY**

Having denied relief on Petitioner's habeas claims, the Court will also deny a Certificate of Appealability ("COA").  Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding unless he has "made a substantial showing of the denial of a constitutional right."  Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will deny a COA.

V. **CONCLUSION**

As explained in this Opinion, the Court denies the Petition and denies a COA.  An appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge

DATED: February 16, 2022.